IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRINA RENEE SANDERS,<br><br>          Petitioner,<br><br>v.<br><br>STATE OF CALIFORNIA,<br><br>          Respondent. | )<br>)  No. CV-07-cv-154 RHW JPH<br>)<br>)  ORDER DENYING WRIT OF HABEAS<br>)  CORPUS<br>)<br>)<br>)<br>)<br>)<br>) |

**BEFORE THE COURT** is a petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a person in state custody (Ct. Rec. 1, amended at Ct. Rec. 22), Respondent's answer (Ct. Rec. 28), and Petitioner's reply (Ct. Rec. 29). Randi Dana Covin represents Petitioner. Respondent is represented by Deputy Attorney General Judy Kaida. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 8.) This matter was heard without oral argument. After careful review and consideration of the pleadings submitted, it is ordered that the Petition for Writ of Habeas Corpus be **denied.**

At the time her petition was filed, Petitioner was in custody in Chowchilla, California, pursuant to her 2004 San Joaquin County

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS
- 1 -

conviction for first degree murder.  (Ct Rec. 1 at p. 1.)
Petitioner challenges the 2004 San Joaquin County conviction.
(Ct. Rec. 1.)

**I. BACKGROUND**

**A. Factual History**

The Third District Court of Appeal described the facts:

In September 2002, defendant moved into the Stockton apartment of her daughter Alisha Brown, Brown's infant son, and Brown's fiancé Jason Santos. Defendant's husband had died and she had "lost" her house.

Defendant and Santos did not get along and they argued frequently. Santos and Brown also argued and some of their arguments were based on Santos's dislike of defendant and his desire for her to move out of their apartment.

In the morning of November 9, 2002, defendant noticed that her car had been broken into and the pink slip and registration were missing. She came back into the apartment and looked at Santos accusingly. Brown and Santos denied he was involved. Defendant left the apartment.

That afternoon Santos, Brown and the baby went clothes shopping. On the way home they stopped at a bar where Santos and Brown drank shots of tequila.

They returned to the apartment at approximately 7:00 p.m. Defendant arrived shortly thereafter in a happy mood. Brown told Defendant they had been drinking so defendant left to buy herself beer.

After defendant left, Santos asked Brown to dance with him. When she refused, Santos became "mad" and called Brown a "bitch." He came toward her and she thought he was going to hit her. In response, Brown hit Santos in the head with a Lego box, cutting him in the forehead.

When defendant returned from the store, Santos and defendant began arguing in the living room. Brown did not know what the argument was about. She tried to act as "mediator," but they would not "shut up." Santos left the apartment to get more beer. That night Santos made three trips to buy beer.

When Santos returned from his last trip to the store, he could barely stand up and was slurring his words. He sat on the couch with his body hunched over and his legs

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS
- 2 -

spread apart. Defendant, who was in the kitchen, told Santos she "was going to have somebody come and kick his ass."

Santos stumbled into the kitchen, rummaged through the knife drawer, and said, "I'm not going to have nobody come fuck me up." Before Santos had a chance to grab anything, Brown hit him over the head twice with the telephone and knocked him over. She sat on top of his chest, choked him, and told him she was not going to get up until he calmed down. Santos kept kicking his feet and moving his arms.

Brown told defendant to get the knife out of the drawer and hide it. Instead, defendant held the knife in her hand. Brown then asked defendant to grab the baby because Brown did not want her son to see her sitting on top of Santos. Defendant asked Brown if she wanted her to get the baby a bottle of milk. Brown replied, "Yes." With a knife in her right hand and a baby bottle in her left hand, defendant tried to force open the refrigerator door. Santos's feet were blocking the door. Defendant placed the bottle on the stove and reached into the refrigerator to grab the milk. Santos kicked the refrigerator, bruising defendant's arm. Defendant said she was going to call Brown's father and asked Brown to call 911. Brown told defendant there was no need to call 911.

Defendant started "chopping" at Santos's legs with the knife. Brown asked defendant what she was doing, told defendant to stop, and put her arm in the way. Defendant nicked Brown with the knife and then stopped because she thought she had cut Brown.

Brown got off of Santos after he promised not to hit her. The two sat down on the couch and looked at each other. The argument had stopped and Santos was calm.

Defendant still had the knife in her hand. She was upset that Brown and Santos had made up. Defendant said, "[O]h, my God," and walked off. She went into the kitchen and started sharpening two knives. One was the kitchen knife that belonged to Brown and the other was a knife that belonged to defendant. Defendant walked over to Santos, put the kitchen knife to her crotch, and asked, "You want me to fuck you with this? I know your kind." Santos paid no attention and looked at Brown. Defendant walked back into the kitchen, continued sharpening the knives, and "taunt[ed] Santos, saying, "I got dead aim, I got dead aim."

Santos got up, stumbled toward Brown and told her, "You will always be my girl and Diego [the baby] will

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS
- 3 -

always be my son." Defendant looked at Santos and told him, "I know you want me, I seen the way you look at . . . me when you come out [of] the room." Santos threw a beer can at the wall and said, "Shut up. Just shut up, bitch." He told Brown he was "not like that" and told defendant, "I love you, but I don't like you."

Defendant had "an evil grin" and was holding a knife. Brown thought defendant "looked like she was about to do something" so Brown ran in between defendant and Santos and told him to leave the apartment because defendant was going to stab him. Santos responded, "I'm not going nowhere. She ain't going to stab me."

With two knives in her hands, defendant walked through the living room. Brown, who had the baby in one hand, pushed Santos into the desk to get him away from defendant. Defendant tried to stab Santos three or four times but missed because Brown had knocked Santos into the desk. Brown screamed at defendant to "stop, stop, stop" and asked what she was doing. Santos pushed Brown and the baby out of the way. Defendant stepped closer to Santos and stabbed him.

Bleeding, Santos walked into the bedroom and was face down on the bed. Brown followed Santos and tried to help him breathe. Brown told defendant, "Mama, you punctured his lungs. Why you kill him? Why you kill him?" Defendant got a towel from the closet, threw it on top of Santos's body, and directed Brown to "Cover his wound."

Defendant called 911. According to the police officer who answered the call, defendant yelled "hysterical[ly]" that "she just stabbed a mother fucker in the shoulder."

Stockton Police Officer David Reeder was dispatched to the apartment. There was blood on the kitchen floor and wall. On the countertop was a large butcher knife with blood on the blade. Reeder followed the blood trail through a small hallway into the bedroom where he found Santos. The mattress around Santos's head was soaked in blood. There was a "knife cut" in his shirt and a two-inch laceration on his chest. Santos was dead.

Defendant said, "I did it, take me." Officer Kevin Tyler handcuffed defendant and brought her to his patrol car. She was crying and visibly upset. She smelled of alcohol but did not appear to be intoxicated. En route to the "Essential Services Building," defendant repeatedly asked if Santos was all right and whether she had killed him. She said that she did not want to kill him, he had thrown a beer can at her and made her angry, she stabbed him, and she knew she was going to jail for murder or attempted murder.

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS
- 4 -

1

2          An autopsy was performed on November 10, 2002. There
was a nine and one-half inch stab wound on Santos's right
3    upper chest. There were bruises below the stab wound that
were consistent with the stabber thrusting the knife into
4    Santos's body with such force that the stabber's fist
bruised Santos's body. Santos died of shock and
5    hemorrhaging. Santos must have become unconscious 30
seconds to one minute after the wound was inflicted and he
6    would have died "shortly thereafter."

7          The Defense

8          Defendant testified on her own behalf at trial. The
morning before the stabbing, Santos pulled a knife on her
9    and Brown and said,"I could kill both of you." Defendant
responded, "I ain't a [sic] scared of you."

10         The evening of the stabbing, defendant went to the
store twice to buy beer. When she returned from the first
11   trip, Brown and Santos were arguing, but she did not
"pay[] much attention to it because they always argue." When
12   she returned from the second trip, Santos was wiping his head
and Brown had a Lego bucket in her hand. Brown said, "he
13   tried to swing at me and I hit him in the head with the
bucket."

14
           Brown told defendant to "get the knives so he won't
15   get them." Defendant went into the kitchen and retrieved
one knife from the drawer and retrieved a folding knife
16   from her bag that was between the couch and the table.
Defendant told Brown to call 911 and Brown responded, "No,
17   Mom, don't call 911." Defendant picked up her telephone
but it did not work. She fixed the telephone line and put
18   the knife down. Defendant prepared to hand the telephone
to Brown when defendant was pushed against the sink from
19   behind. Brown "threw" Santos on the floor in front of the
refrigerator. Brown sat on him, choked him, and told him
20   she wanted him to leave.

21         Defendant told Santos, "You stupid idiot, you trying
to fight her. I told you one day she'd over power you."
22   The baby started crying and defendant announced she was
going to prepare a bottle for the baby. Santos, whose feet
23   had been against the refrigerator, pulled back his feet as
though to accommodate the defendant. Instead, when defendant
24   reached into the refrigerator to get the milk, Santos pushed
the refrigerator door with his feet "really hard" and pinned
25   her in the refrigerator. Defendant grabbed a knife and
started swinging it but could not reach Santos. She started
26   hitting his legs with the heel of her foot.

27         Santos kept telling Brown he loved her. Brown asked
Santos, "If I let you up, you're not going to swing at
28

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS
- 5 -

anybody?" Defendant told Brown, "Don't let him up. Let me call 911." Santos and Brown told defendant not to make the call and she complied. Defendant then tried to call her oldest daughter and the daughter's father but they were not home.

Brown got off of Santos, which "startled" defendant. Defendant told Santos to leave ut he sat on the couch and said, "I ain't going no fucking where." Defendant was in the kitchen and she and Santos were "fussing back and forth." She was not sure whether she "started on" him or he "started on" her. She called him a "[p]unk" and "faggot" and he called her a "bitch" and "slut." He threw three or four Lego or domino pieces at her. Defendant, who still had the knives, told Santos that he should leave, that she would throw "it" at him, and that "I bet I'll stick you." She told Brown to tell him to "quit throwing those dominos at me because I have dead aim." Santos complied with defendant's request but told her he was going to "fuck [her] up." Defendant responded, "you ain't fucking nobody up, I'll fuck you up."

Cussing, Santos approached defendant and "got kind of too close to [her]." Defendant started backing up. He threw a beer at her. It "skimmed" her and hit the wall. He grabbed the baby and used him as a shield. Defendant told Brown to get the baby away from Santos. Brown grabbed the baby and pushed Santos, saying,"She's going to stab you." Santos said, "Your mother ain't gonna do shit to me" and then swung at defendant but missed.

Defendant "went around the divider" and stabbed Santos in the shoulder. The knife went in all the way. Santos ran into the bedroom and defendant called 911. While on the telephone, she heard Brown screaming louder and louder. She put the telephone down and examined Santos's wound. Defendant did not see blood coming from the wound, thought Santos was "all right," and went back to the telephone.

Defendant had felt threatened by Santos and thought he was going to do something to her or Brown. She intended to "stop" Santos when she "poke[d]" him with the knife. She did not want to kill him.

During cross-examination, defendant acknowledged she had told police, "It's my fault. I struck him with the knife because he hit me with a beer. And I lost my temper and I just started sticking him. I kept trying to stick him because I just got tired."

Defendant also acknowledged telling a defense investigator that Santos was mean to her, had called her a "crack mother," and "cuss[ed]" at her. She believed Santos

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS
- 6 -

was jealous of her and Brown's relationship. Santos told her more than once that he did not want her living in the apartment. She believed Santos treated Brown "like hell" and was "just an asshole."

In August 2003, psychologist Dr. Nancy Kaser-Boyd administered s series of tests to defendant, conducted a "fairly" long evaluation of her, and reviewed her mental health records from Fresno County and much of the "discovery" in this case. It was Dr Kaser-Boyd's opinion defendant suffered from chronic post traumatic stress disorder (PTSD).

Dr. Kaser-Boyd recounted that defendant grew up in a home with "extreme violence." On one occasion, her father beat her brother with a baseball bat. On another occasion, her father shot at defendant, narrowly missing her. When defendant was six years old, she was sexually abused by a stepbrother. When she was 12 or 13 years old, she and a girlfriend were kidnapped by two men and were beaten and raped repeatedly. She later had a relationship with a man who was violent toward her and the children. Defendant's first child was born one month prematurely because her then husband "liked forceful sex." Her second child was born two months prematurely "[b]ecause her raped [her]."[1]

Dr. Kaser-Boyd said it was rare for people to come through these events without a mental disorder. Most typically, these victims suffer PTSD. The symptoms of PTSD are: (1) "reexperiencing," i.e., flashbacks, nightmares, profound helplessness, incredible vulnerability, and fear; (2) "avoidance symptoms," i.e., forcing oneself not to think about the traumatic memories or numbing oneself with alcohol or psychiatric medication; and (3) "hyperarousal symptoms" such as hypervigilance. PTSD victims can see a threat where people who did not suffer PTSD would not see a threat.

Santos's mother testified that in 1998, Santos grabbed her by the shoulders and pushed her toward the kitchen floor and the refrigerator door. Santos was arrested for battery.

Also in 1998, Santos repeatedly hit his then-girlfriend Saundra Gill on her face and told her that he was going to "F" her up after the two had an argument about Santos's loud music.

(Lodged Doc. D, Attached Appendix at 2-12.)

---

[1]Dr. Kaser-Boyd admitted during cross-examination that, for 14 or 15 years, defendant lived with a man who never abused or mistreated her. (Original fn 5.)

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS
- 7 -

**B.   Procedural History**

As indicated, after a jury trial in San Joaquin County, California Superior Court, the Petitioner was found guilty of first degree murder with personal use of a knife.[2]  (Clerk's Transcript at 368-369.)   The trial court sentenced defendant to 26 years to life.  (Clerks' Transcript at 395.) After trial, defendant appealed and the Third Appellate District affirmed. (Lodged Document D at attached appendix 1-12.) The California Supreme Court denied Ms. Sanders's petition for review on November 2, 2005. (Lodged Document E.)

On August 18, 2006, Ms. Sanders filed a petition for a writ of habeas corpus in the San Joaquin County Superior Court. (Ct. Rec. 11 at 28-111.)   The court denied her petition on October 11, 2006. (Ct. Rec. 11 at 22-24.)   An amended order denying the petition was filed November 7, 2006. (Ct. Rec. 11 at 25-26.)   On December 15, 2006, Ms. Sanders filed a petition for a writ of habeas corpus in the California Supreme Court.   (Lodged Doc. F.) The court denied the petition on June 7, 2007. (Lodged Doc. G.)

On January 24, 2007, Ms. Sanders filed the federal habeas petition. (Ct. Rec. 1.) Ms. Sanders's reply notes that, because her original federal petition raised two exhausted claims, she was granted a stay of these proceedings in order to exhaust four additional claims. (Ct. Rec. 29 at 5-6; Ct. Rec. 16; Ct. Rec. 19.) After the stay was lifted, Ms. Sanders filed the current amended petition. (Ct. Rec. 22.)

**C. Federal and state claims**

---

[2]in violation of Cal. Penal Code, § 187, 12022(b).

1    In her federal habeas petition, Ms. Sanders raises the

2 following claims:

3 <u>Federal habeas claim one</u>: Insufficient evidence of malice

4 aforethought and premeditation, together with compelling evidence

5 of imperfect self-defense and heat of passion, resulted in a

6 conviction violating due process. (Ct. Rec. 22 at 5.)

7 <u>Federal habeas claim two</u>: Because the trial court excluded

8 testimony from Ms. Sanders about her prior abuse, she was deprived

9 or her right to present a defense and to due process of law. (Ct.

10 Rec. 22 at 6.)

11 <u>Federal habeas claim three</u>: Trial counsel's assistance fell below

12 Sixth Amendment standards because he failed to present Sylvia

13 Roiland's testimony.  She would have corroborated Ms. Sanders's

14 contradicted testimony that Mr. Santos threatened both Alisha

15 Brown and Ms. Sanders with a knife the day before the homicide.

16 (Ct. Rec. 22 at 6.)

17 <u>Federal habeas claim four</u>: Trial counsel's assistance fell below

18 Sixth Amendment protections when he failed to present expert

19 testimony on Battered Woman's Syndrome. (Ct. Rec. 22 at 6-7.)

20 <u>Federal habeas claim five</u>: Trial counsel's assistance fell below

21 Sixth Amendment protections when he failed to present the

22 testimony of Lesa Brown and Sylvia Roiland to corroborate Ms.

23 Sanders's reported abuse. (Ct. Rec. 22 at 7.)

24 <u>Federal habeas claim six</u>: Trial counsel's assistance fell below

25 Sixth Amendment standards when he failed to elicit testimony from

26 Ms. Sanders about her PTSD symptoms and fear of Mr. Santos. (Ct.

27 Rec. 22 at 8.)

28

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS
- 9 -

1    In the state's highest court rendering a reasoned decision,

2   Ms. Sanders raised the following issues:

3   State court claim one: Petitioner's conviction violated due

4   process because "there was insufficient evidence of malice

5   aforethought and premeditation and compelling evidence of

6   imperfect self-defense and heat of passion." (Lodged Doc. A at

7   19.)

8   State court claim two: The trial court violated Ms. Sanders's

9   right to due process and to present a defense by excluding

10  testimony regarding her history of victimization. (Lodged Doc. A

11  at 31.)

12  State court claim three: Trial counsel was ineffective for failing

13  to corroborate petitioner's testimony by presenting the testimony

14  of Sylvia Roiland. She would have testified Alisha Brown admitted

15  Mr. Santos threatened her (Alisha), and Ms. Sanders, with a knife

16  the day before the homicide. (Lodged Doc. F at 3.)

17  State court claim four: Trial counsel was ineffective for  failing

18  to present expert testimony regarding Battered Woman's Syndrome,

19  in violation of the Sixth and Fourteenth Amendments. (Lodged Doc.

20  F at 4.)

21  State court claim five: Trial counsel was ineffective for failing

22  to present testimony corroborating Ms. Sanders's reports of prior

23  abuse, in violation of the Sixth and Fourteenth Amendments.

24  (Lodged Doc. F at 4-A.)

25  State court claim six: Trial counsel's assistance fell below the

26  Sixth and Fourteenth Amendments's protections because he  failed

27  to elicit Ms. Sanders's testimony about her PTSD symptoms and fear

28

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS
- 10 -

1  of Mr. Santos. (Lodged Doc. F at 4-B.)

2  **II. EXHAUSTION OF STATE REMEDIES**

3      As a preliminary issue, Petitioner must have exhausted her
4  state remedies before seeking habeas review.  The federal
5  courts are not to grant a writ of habeas corpus brought by a
6  person in state custody pursuant to a state court judgment
7  unless 'the applicant has exhausted the remedies available in
8  the courts of the State.' *Wooten v. Kirkland*, 540 F. 3d 1019,
9  1023 (9th Cir. 2008), citing 28 U.S.C. §2254(b)(1)(A).  "This
10 exhaustion requirement is 'grounded in principles of comity' as
11 it gives states 'the first opportunity to address and correct
12 alleged violations of state prisoner's federal rights.'" *Id.*,
13 citing *Coleman v. Thompson*, 501 U.S. 722, 731 (1991).

14     In order to exhaust state remedies, a petitioner must have
15 raised the claim in state court as a federal claim, not merely as
16 a state law equivalent of that claim.  See *Duncan v. Henry*, 513
17 U.S. 364, 365-66 (1995).  The state's highest court must be
18 alerted to and given the opportunity to correct specific alleged
19 violations of its prisoners' federal rights.  *Id.,* citing *Picard*
20 *v. Connor*, 404 U.S. 270, 275 (1971).  To properly exhaust a
21 federal claim, the petitioner is required to have presented the
22 claim to the state's highest court based on the same federal legal
23 theory and the same factual basis as is subsequently asserted in
24 federal court.  *Hudson v. Rushen*, 686 F. 2d 826, 829-30 (9th Cir.
25 1982), *cert. denied*, 461 U. S. 916 (1983).

26     Respondent may waive the exhaustion requirement.  *See* 28
27 U.S.C. § 2254 (b)(3) ("A state shall not be deemed to have waived

28
ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS
- 11 -

the exhaustion requirement or be estopped from reliance on the requirement unless the state, through counsel, expressly waives the requirement;" *Atwood v. Schiro*, 489 F. Supp. 982, 996 (2007).) In his answer to the petition, Respondent admits that "Petitioner has exhausted her state court remedies on claims 1, 2, 3, 4, and 5 to the extent interpreted by Respondents herein." (Ct. Rec. 28 at 3.)  Thus, counsel expressly waived the exhaustion requirement with respect to claims one through five. Generally, a habeas court may, in its discretion reach the merits of a habeas claim or may insist on exhaustion of state remedies despite a State's waiver of the defense. *See Boyd v. Thompson*, 147 F. 3d 1124, 1127 (9th Cir. 1998).  The court's discretion should be exercised to further the interests of comity, federalism, and judicial efficiency. *See id.* It appears to advance the interests of the parties and judicial efficiency (without unduly offending the interests of either comity or federalism) for the Court to decide these claims on the merits, as more fully discussed herein.

Respondent's answer asserts Ms. Sanders's sixth federal claim, that trial counsel was ineffective in failing to elicit Petitioner's testimony about her PTSD symptoms and fear of the victim, Mr. Santos, is unexhausted because she failed to raise it in the state supreme court. (Ct. Rec. 28 at 3.)  Citing *Rose v. Lundy*, 455 U.S. 509, 522 (1982), Respondent asked the court to dismiss the petition as mixed; i.e., presenting exhausted and unexhausted claims.  (Ct. Rec. 28 at 3).

In her reply, Ms. Sanders notes an incomplete petition, omitting claim six, was filed as Lodged Document F. (Ct. Rec. 29

at 20.) On December 6, 2007, the parties stipulated and the court agreed that the previously Lodged Document F should be stricken and replaced with the complete copy provided. (Ct. Rec. 31.)  The complete copy contains claim six.  Ms. Sanders affirmatively avers that all of her federal habeas claims have been exhausted in the state's highest court. (Id.)  Respondent has not further disputed her assertion.

Federal habeas claim one  Ms. Sanders first claims "insufficient evidence of malice aforethought and premeditation," together with "compelling evidence of imperfect self-defense and heat of passion," resulted in a conviction that violates due process. (Ct. Rec. 22 at 5.)  Ms. Sanders raised the same claim based on the same facts, and invoking federal law, in the state's highest court that rendered a reasoned decision. (Lodged Doc. A at 19.)  Respondent is correct that Ms. Sanders exhausted her first federal habeas claim.  *See* merits herein.

Federal habeas claim two  When the trial court prevented  Ms. Sanders from testifying about her "her history of victimization," she claims the trial court violated her rights to due process and to present a defense.  (Ct. Rec. 22 at 3.) Ms. Sanders raised the same claim based on the same facts, and cited federal law in support of the argument, to the state's highest court rendering a reasoned decision.  (Lodged Doc. A at 31.) Respondent is correct that Ms. Sanders exhausted her second federal habeas claim.  *See* merits herein.

Federal habeas claim three  Ms. Sanders claims trial  counsel was ineffective because he failed to present testimony that Mr.

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS
- 13 -

Santos threatened Alisha Brown and Ms. Sanders with a knife the night before the homicide.  (Ct. Rec. 22 at 6.)  In the state's highest court issuing a reasoned decision, Ms. Sanders made the same argument based on the same facts and cited supporting federal law. (Lodged Doc. F at 4.)  Respondent is correct that Ms. Sanders exhausted her third federal habeas claim.

Federal habeas claim four  Ms. Sanders claims trial counsel's representation fell below Sixth Amendment standards because he failed to present expert testimony on Battered Woman's Syndrome. (Ct. Rec. 22 at 6.)  In the state's highest court issuing a reasoned decision, Ms. Sanders made the same argument based on the same facts, and cited supporting federal law. (Lodged Doc. F at 4.)  Respondent is correct that Ms. Sanders exhausted her fourth federal habeas claim.

Federal habeas claim five  Ms. Sanders claims trial counsel's failure to present testimony corroborating her past abuse violated her Sixth Amendments.  (Ct. Rec. 22 at 7.)  Ms. Sanders presented the same issue based on the same facts, and invoked federal law, in the state's highest court issuing a reasoned decision.  Her fifth federal claim is exhausted.

Federal habeas claim six  Ms. Sanders claims trial counsel's performance fell below Sixth and Fourteenth Amendment standards because he failed to elicit her testimony about her PTSD symptoms and fear of Mr. Santos. (Ct. Rec. 22 at 8.)  In the state's highest court, as shown in the more complete Lodged Doc. F at 4-B, Ms. Sanders presented the same claim based on the same facts, and in reliance on federal law, to the state's highest court issuing a

reasoned decision.  Claim six has been exhausted in the state court.

In sum, Ms. Sanders has exhausted all six federal habeas claims.

**III.  PROCEDURAL DEFAULT**

Having determined Petitioner has exhausted federal habeas claims one through six, the undersigned considers the applicability of the procedural default doctrine.  When the doctrine applies, a petitioner's failure to comply with a state procedural rule may bar habeas relief if "adequate and independent state procedural grounds" are shown.  *See e.g.*, *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).  Procedural default does not bar considering a federal habeas claim unless the last state court rendering a judgment clearly and expressly states that its judgment rests on a state procedural bar. *Harris v. Reed*, 489 U.S. 255, 263 (1989).  The first requirement is a petitioner's actual violation of a state procedural rule.  *See e.g., Cassette v. Stewart,* 406 F.3d 614, 621-622 (9th Cir. 2005).

The Third Appellate District denied the first claim (insufficient evidence of malice aforethought and premeditation) after reviewing the entire record.  The court considered evidence of malice and premeditation as well as of imperfect self-defense in reaching its determination.  (Lodged Doc. D, Appendix at 12-16.)  Clearly the court reached the issue on the merits, rather than relying an independent and adequate state procedural rule or state procedural bar.

Alternatively, the claim can be viewed as barred by

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS
- 15 -

procedural default because a claim of insufficiency of the evidence can only be considered on direct appeal, not in a habeas proceeding. *In re Lindley*, 177 P.2d 918, 926-927 (Cal. 1947). The state rule is both adequate and independent. *Carter v. Giurbino*, 385 F.3d 1194, 1197-1198 (9th Cir. 2004).  Nonetheless, the court briefly addresses the claim on the merits.

Petitioner's second habeas claim, that the trial court's exclusion of her testimony about prior sexual and physical abuse violated her rights to due process and to present a defense, was also considered by the appellate court and rejected as harmless error because Petitioner failed to show prejudice.  (Lodged Doc. D, appendix at 16-18.)  Procedural default is inapplicable to Ms. Sanders's second federal claim because the state court did not decide petitioner violated a state procedural rule when she presented it.

The San Joaquin County Superior Court considered and discussed federal claims 3-6.  (Lodged Doc. F at Attached Order.) The court reviewed the record and found Ms. Sanders had not established prejudice as a result of trial counsel's representation.  (Lodged Doc. F, attached order at 2.)  Procedural default is inapplicable to claims 3-6 because the state court did not deny them based on any violation of a state procedural rule.

Because the Third Appellate District and superior courts decided the issues on the merits, procedural default is not applicable.

///

**IV. MERITS**

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS
- 16 -

**A.   Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), applicable here, a federal court may grant habeas relief if a state court adjudication resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence. 28 U.S.C. § 2254 (d).  "AEDPA does not require a federal habeas court to adopt any one methodology in deciding the only question that matters under § 2254(d)(1) - whether a state court decision is contrary to, or involved an unreasonable application of, clearly established federal law."  *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003), referring to *Weeks v. Angelone*, 528 U.S. 225 at 237 (2000).  Where no decision of the Supreme Court "squarely addresses" an issue or provides a "categorical answer" to the question before the state court, § 2254(d)(1) bars relief.  *Moses v. Payne*, 543 F.3d 1090, 1098 (9th Cir. 2008), relying on *Wright v. Van Patten*, 552 U.S. 120, 128 S. Ct. 743, 746 (2008); *Carey v. Musladin*, 549 U.S. 70 (2006).

Federal courts apply the *Brecht* standard to determine whether a constitutional error was harmless.  *Fry v. Pliler,* 551 U.S. 112 (2007)*; Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993).  Habeas relief is warranted only if the error had a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht,* 507 U.S. at 637 ((citing *Kotteakos v. United States,* 328 U.S. 750, 776 (1946)); *Bains v. Cambra*, 204 F.3d 964, 977-78 (9th

Cir. 2000) *cert. denied*, 531 U.S. 1037 (2000)).  That is, the Petitioner is entitled to habeas relief only if he can show that any constitutional violation "resulted in actual prejudice." *Brecht,* 507 U.S. at 638 (internal citation omitted).

**B.  Federal claim one: insufficiency of evidence**

Petitioner alleges she was denied a fair trial because the evidence of malice aforethought and premeditation are not sufficient to support her conviction.  (Ct. Rec. 22 at 5.)  The highest state court ruling on the issue, the San Joaquin County Superior Court, held:

> Defendant contends her first degree murder conviction must be reversed because the prosecution presented insufficient evidence of malice aforethought and premeditation. She further contends the evidence compelled a finding that she acted in the heat of passion or with the honest, though unreasonable, belief in the need for self-defense or defense of others.

> We review a claim of insufficient evidence by evaluating the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value from which a rational trier of fact could have found the essential elements beyond a reasonable doubt. (*People v. Price* (1991) 1 Cal.4th 324, 462, superseded by statute on other grounds as stated in *People v. Hinks* (1997) 58 Cal.App.4th 1157, 1161-1165.) We cannot reverse a conviction on the ground of insufficient evidence unless it clearly appears "that upon no hypothesis whatever is there sufficient substantial evidence to support it." (*People v. Redmond* (1960) 71 Cal.2d 745, 755.)

> Substantial evidence is evidence that a reasonable jury could find persuasive. (*People v. Barton* (1995) 12 Cal.4th 186, 201, fn. 8.)  On appeal, the test is not whether the evidence proves guilt beyond a reasonable doubt (*People v. Mincey* (1992) 2 Cal.4th 408, 432), or whether the evidence would "support some other finding" (*People v. Cartier* (1960) 54 Cal.2d 300, 306).  The question, instead, is whether "'*any* rational trier of fact could have found the essential elements of the allegation beyond a reasonable doubt.'" (*People v. Rowland* (1992) 4 Cal.4th 238, 271.)

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS
- 18 -

Murder is the unlawful killing of a human being with malice aforethought. (Pen. Code, § 187, subd. (a).)   All murder perpetrated by any kind of willful, deliberate, and premeditated killing is murder of the first degree. (§ 189.) Malice may be either express or implied. It is express when the defendant manifests "a deliberate intention unlawfully to take away the life of a fellow creature." (§ 188.) It is implied when "no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (*Ibid*.)

An intentional and unlawful killing lacks malice and is the lesser included offense of voluntary manslaughter if it is committed in a "sudden quarrel or heat of passion" or in imperfect self-defense. (§ 192, subd. (a); *People v. Rios* (2000) 23 Cal.4th 450, 460-461.) Imperfect self-defense requires a showing that the intentional killing was the result of an honest but unreasonable belief in the need to defend oneself from imminent peril to life or great bodily injury. (*People v. Flannel* (1979) 25 Cal.3d 668, 674-675, superseded by statute on other grounds as stated in *In re Christian S.* (1994) 7 Cal.4th 768, 776.)

This record contains substantial evidence supporting the jury's conclusion that defendant did not, in fact, act in the heat of passion or under an actual, though unreasonable, belief in the need to defend herself or others from imminent peril to life or great bodily injury, but instead acted with a deliberation and premeditation born of malice.

According to Brown, on the morning of the stabbing, defendant looked accusingly at Santos after discovering that her car had been broken into. In the evening, after all three had been drinking, Brown heard defendant say she "was going to have somebody come and kick [Santos's] ass." After Brown sat on Santos, defendant retrieved a knife from the kitchen drawer and held it in her hand although Brown had told her simply to hide the kitchen knife.

After Brown got off of Santos, defendant was upset because she perceived Brown and defendant had made up. Defendant went in the kitchen and started sharpening two knives, the second which she retrieved from her bag that was between the couch and table. She approached Santos in the living room, put the kitchen knife to her crotch, and asked him, "You want me to fuck you with this? I know your kind."

Defendant walked back into the kitchen and kept sharpening the knives and "taunt[ed]" him saying twice, "I got dead aim." She also told Santos, "I know you want me, I seen the way you look at . . . me when you come out [of] the room." Santos threw a beer can at the wall and

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS
- 19 -

said, "Shut up. Just shut up, bitch."

Grinning, defendant walked through the living room. She missed stabbing Santos the first three or four times because Brown knocked Santos into the desk. Defendant stepped closer to Santos and stabbed him. This fatal stab wound was to Santos's upper right chest and was nine and one-half inches deep. Defendant stabbed Santos with such force that her fist bruised Santos's body. These actions could certainly be viewed to reflect planning and deliberation.

While defendant testified Santos swung at her immediately before she stabbed him and that she felt threatened by Santos and thought he was going to do something to her or Brown, the jury apparently gave little, if any, weight to that evidence. Because it is not our task to supplant reasonable theories accepted by the trier of fact with alternative theories, we reject defendant's challenge to the sufficiency of the evidence on appeal.

(Lodged Doc. D, Attached Appendix at 12-15.)

The undersigned agrees with the state court's analysis. The record contains substantial evidence supporting the jury's conclusion that Ms. Sanders did not act in the heat of passion or due to an actual but unreasonable belief in the need to defend "herself or others from imminent peril to life or great bodily injury, but instead acted with a deliberation and premeditation born of malice." (Lodged Doc. D, Attached Appendix at 14.) The evidence shows deliberation, planning, and malice: Ms. Sanchez sharpened two knives; repeatedly attempted to stab Mr. Santos before succeeding; Mr. Santos was, as Respondent points out, intoxicated and unarmed at the time; the fatal wound was a little more than nine inches long, and, inflicted with such force, that Ms. Sanders left a bruise with her fist when she stabbed him. The jury's verdict with respect to premeditation and the lack of imperfect self-defense is supported by substantial evidence.

Ms. Sanders fails to show the state court's decision

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS
- 20 -

is contrary to or involved an unreasonable application of federal law, as required of a habeas petitioner.  Claim one is denied as without merit.

## C.  Federal claim two: excluding petitioner's testimony about past abuse

Petitioner alleges the trial court deprived her of the right to present a defense by excluding her testimony about her past sexual and physical abuse. The superior court found:

> *The Trial Court Did Not Prejudicially Err in Excluding Defendant's Testimony of Her History of Being Sexually and Physically Abused*
>
> After defendant testified, and out of the presence of the jury, counsel stated he had "wanted to ask [defendant] questions about prior acts of violence against her . . .," believing this was relevant to explain why defendant did not leave the apartment or call 911.
>
> The court denied counsel's request, explaining: "First of all, the battered woman's syndrome, like I said in limine, why someone leaves and doesn't leave, the courts have held are between the two parties, the batterer and the victim, which is not a situation we had here. I also felt that whatever acts of violence [defendant] has sustained in her youth go to the issue of post-traumatic stress syndrome, which may go to her heightened sense of fear. And the expert would certainly be allowed to argue that, or to testify to that, and you would be allowed to argue that."
>
> The court later ruled that Dr. Kaser-Boyd could testify about her diagnosis of the defendant, the basis for the diagnosis, and the "stressors" that may retrigger the symptoms.
>
> On appeal, defendant contends the trial court violated her federal constitutional rights to due process and to present a defense when it ruled she could not testify regarding "her history of victimization." She argues this evidence was relevant and critical to the jury's determination of her mental state.
>
> We need not decide whether the court erred in prohibiting counsel from questioning defendant about her history of being sexually and physically abused because the alleged error is harmless under any prejudice-based standard or reversible error. (*Chapman v. California* (1967)

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS
- 21 -

1

386 U.S. 18, 22-23 [harmless beyond a reasonable doubt standard]; *People v. Watson* (1956) 46 Cal.2d 818, 836 [reasonable probability of a different result].)

2

3

Dr. Kaser-Boyd testified about several instances of physical and sexual abuse that defendant allegedly had suffered. These included her father shooting at her; her stepbrother sexually abusing her; two men kidnapping, beating, and raping her and a friend; and the father of her children raping her and acting violently toward her and her children.

4

5

6

7

Defendant acknowledges this evidence but argues that Dr. Kaser-Boyd's testimony could not "cure the harm from exclusion of [her] testimony on the same subject" because the prosecutor suggested during his cross-examination of Kaser-Boyd that defendant was lying and stating during rebuttal closing argument that no psychologist or psychiatrist is a lie detector.

8

9

10

11

Defendant overlooks the fact that the jury had significant opportunities to evaluate defendant's credibility and mental state when she testified at trial on her own behalf and when the videotaped interview between police and defendant was played. Thus, the trial court's denial of defense counsel's request to question defendant about her history of being abused did not prevent the jury from assessing her credibility and mental state.

12

13

14

15

(Lodged Doc. D, attached appendix at 16-18.)

16

The undersigned agrees with the superior court

17

that if the trial court erred by excluding this evidence, it is

18

harmless under any prejudice-based standard. The jury heard

19

relevant evidence of Ms. Sanders's mental state: they heard her

20

testify, saw a videotape of her interview with police, and heard

21

expert testimony from Dr. Kaser-Boyd about the symptoms, fears and

22

reactions of people suffering from PTSD. Even if the court

23

admitted the additional evidence, it is extremely unlikely the

24

jury would have reached a different result. For habeas purposes,

25

petitioner fails to show the state court's decision is contrary to

26

or involved an unreasonable application of clearly established

27

federal law. Petitioner's second claim is denied because it is

28

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS
- 22 -

without merit.

**D.     Federal claim three: counsel was ineffective because he failed to present the testimony of another daughter, Ms. Roiland, to corroborate Mr. Santos's prior threat**

Petitioner alleges counsel's failure to present the testimony of Sylvia Roiland, sister of Alisha Brown, was deficient.  She alleges Ms. Roiland would corroborate her (Ms. Sanders's) version of events, that Mr. Santos threatened Petitioner and Alisha Brown with a knife the night before the homicide.  (Ct. Rec. 22 at 6.) Ms. Sanders testified Santos threatened her and Ms. Brown with a knife the night before the homicide, but Ms. Brown testified that he did not. (Id.)  Petitioner alleges Ms. Roiland, "could have testified that [Alisha] Brown admitted to her that Santos had threatened her and petitioner with a knife." (Id.) Ms. Sanders alleges counsel knew about the admission but failed to present Ms. Roiland's testimony because "he just forgot in the heat of trial." (Id.)

The superior court addressed the issue:

Upon review, Petitioner has submitted supporting declarations from Ms. Sylvia Roiland, Ms. Lisa Brown and Dr. Kaser-Boyd outlining what their testimony and/or opinions would be. Also, there is a declaration from trial counsel, Mr. Richard Schaffer wherein he admits to having not considered certain testimony based on inadvertence and/or futility of offering the evidence based on earlier evidentiary rulings. He notes his surprise at the verdict and without admitting any error, offers to do whatever he can to rectify the situation.

. . .

As to the substantive claims, the record in the case reflects sufficient evidence that Petitioner did not act in the heat of passion or under the belief in the need to protect against imminent peril from Santos (i.e., he had been subdued by Alisha, Petitioner retained two knives and Santos

was not armed, Petitioner taunted Santos and had taken several swings and missed and then stepped closer and stabbed again). Further, the jury was presented with and listened to both the 911 call and the videotaped interview of Petitioner and the police after the incident, along with Petitioner's own testimony where she admitted that Santos was just mean to her, called her names, had not wanted her to live there, teased Brown "like hell" and was "just an asshole."

In light of this evidentiary record, the court finds the evidence offered to establish that counsel's assistance was ineffective, fails to show it would have been of assistance in the defense or that within a reasonable probability, the outcome would have been different. Absent such a showing, Petitioner has failed to establish trial counsel's alleged conduct was deficient and as such, prejudiced her and the outcome of the proceeding. (*Strickland v. Washington* (1984) 466 U.S. 668; *People v. Weaver* (2001) 26 Cal.4th 876.)

In that regard, Petitioner has therefore failed to set forth a prima facie case for habeas relief and summary denial is appropriate. (*In Re Bower* (1985) 38 Cal.3d 865; and *People v. Jackson* (1980) 28 Cal.3d 264.) Based on the foregoing, the petition is denied on this issue.

(Lodged Doc. F, attached opinion at p. 2.)

On habeas review of claimed ineffective assistance, this court must first determine whether the trial court considered "the underlying merits of the case to come to a tentative conclusion as to whether [a] claim, if properly presented, would be viable," notwithstanding the alleged ineffective assistance of counsel. *See Jie Lin v. Ashcroft,* 377 F.3d 1014, 1027 (9th Cir. 2004.)  With respect to claim three, the state court determined that Ms. Sanders was not prejudiced by the alleged deficiency of failing to present Ms. Roiland's testimony.  Accordingly, the state court found the claim not viable.

*Strickland's* two-pronged test requires a showing of deficient performance and prejudice to the defendant. *Strickland v. Washington*, 466 U.S. 668, 688-689 (1984). To satisfy the first

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS
- 24 -

prong, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. (*Id*., at 688.) This requires identifying the acts or omissions that are alleged to not have the result of reasonable professional judgment. (*Id*., at 690.) The federal court then determines whether, in light of all the circumstances, the acts or omissions were outside the wide range of professional competent assistance. (*Id*.) In making this determination, there is a strong presumption "that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made." *Hughes v. Borg*, 898 F.2d 695 (9th Cir. 1999), citing *Strickland*, 466 U.S. at 689.

Second, a petitioner must prove prejudice. See *Strickland*, 466 U.S. at 693. Prejudice is established when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Id*. at 694.) A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice. . . that course should be followed." *Pizzuto v. Arave*, 280 F.3d 949, 955 (9th Cir. 2002), quoting *Strickland*, 466 U.S. at 697.

The undersigned agrees with the state court's analysis. Error, even if error is assumed, that is unlikely to have changed the outcome of the case fails to establish prejudice necessary to

demonstrate ineffective assistance. *Strickland*, 466 U.S. at 694. Moreover, Ms. Sanders fails to meet her habeas burden of showing that the state court's decision is contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence. *See e.g., Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003).  Accordingly, the third federal claim is denied as without merit.

**E.   Federal claim four: failing to present expert testimony on Battered Woman Syndrome was deficient**

Petitioner alleges counsel was deficient because he failed to present expert testimony on Battered Woman's Syndrome. (Ct. Rec. 22 at 6.)

Ms. Sanders fails to show prejudice resulting from counsel's failure to present evidence that Ms. Sanders suffered from Battered Woman's Syndrome. Had trial counsel presented such evidence, it is extremely unlikely in light of the other  evidence that the result would have been different.  The reviewing court accurately points out that the jury heard expert testimony about PTSD, saw Ms. Sanders testify, and watched the videotape of her interview with police.  After reviewing the record, the state court correctly concluded this evidence gave the jury ample opportunity to consider Ms. Sanders's credibility and assess her mental state.  As the state court further correctly observed, battered woman syndrome applies between the partners in a batterer and victim relationship, a relationship not present here between Ms. Sanders and her daughter's partner, Mr. Santos.  And, for

purposes of habeas review, Ms. Sanders's claim fails because she does not establish that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003)(citation omitted).  Accordingly, federal claim four is denied as without merit.

**F.   Federal claim five: counsel was deficient because he failed to present witnesses Lesa Brown and Sylvia Roiland to corroborate Ms. Sanders's past abuse**

Petitioner alleges trial counsel was deficient because he failed to present the testimony of Ms. Roiland and Ms. Brown to corroborate Petitioner's past abuse.  (Ct. Rec. 22 at 7.)

This claim similarly fails because Petitioner fails to establish prejudice as required by *Strickland*.  As noted, the jury learned of Ms. Sanders's past abuse through the testimony of Dr. Kaser-Boyd and heard Petitioner testify on her own behalf.  She fails to establish prejudice resulting from counsel's representation.

With respect to habeas review, petitioner fails to show the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence. *See e.g., Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003).  Ms. Sanders cites no decision by the U.S. Supreme Court contrary to the state court's decision which could provide a basis for federal habeas relief. Petitioner's fifth claim is denied.

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS
- 27 -

**G.    Federal claim six: counsel was deficient because he failed to present Ms. Sanders's testimony about her PTSD symptoms and fear of the victim**

Petitioner claims trial counsel's failure to elicit testimony from her about her PTSD symptoms and fear of Mr. Santos was deficient.  (Ct. Rec. 22 at 8.)

Counsel's failure to present evidence of PTSD (in addition to the testimony of Dr. Kaser-Boyd) and of Ms. Sanders's fear of Mr. Santos, is not deficient because, as the state court found, Ms. Sanders does not establish that the decision prejudiced her.  At trial Ms. Sanders testified Mr. Santos had  threatened her and her daughter Alisha the night before the homicide - evidence refuted by Alisha and apparently rejected by the jury.  The state courts observed the physical evidence and some of Ms. Sanders's own statements strongly corroborated Ms. Brown's, rather than Ms. Sanders's later, version of events. Since there was strong additional evidence supporting Ms. Brown's and contradicting Petitioner's version of events, Petitioner does not show that her testimony with respect to PTSD or fear of Mr. Santos was reasonably likely to have changed the outcome of the case, nor that counsel's trial choices prejudiced her.

The undersigned agrees with the state court's analysis. Error (even if error is assumed) that is unlikely to have changed the outcome of the case fails to establish prejudice necessary to demonstrate ineffective assistance. *Strickland*, 466 U.S. at 694. Moreover, Ms. Sanders fails to meet her habeas burden of showing that the state court's decision is contrary to, or involved an unreasonable application of, clearly established federal law, or

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS
- 28 -

resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence. *See e.g.*, *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003).  Ms. Sanders cites no decision by the United States Supreme Court contrary to the state court's decision which could provide a basis for federal habeas relief.  Accordingly, Ms. Sanders's sixth federal claim should be denied.

**V.   CONCLUSION**

     For the reasons stated above, the Petition for Writ of Habeas Corpus (Ct. Rec. 1) is **DENIED**.

     The District Court Executive **SHALL FILE** this order, serve copies of it on the parties, and **CLOSE** the file.

          **DATED** this 28th day of July, 2009.


                         s/James P. Hutton

                         JAMES P. HUTTON
                    UNITED STATES MAGISTRATE JUDGE

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS
- 29 -